MAY *et al.* v. ABERNATHY.—130 S. W. (2d) 135.

Middle Section.   January 28, 1939.

Petition for Certiorari denied by Supreme Court, July 1, 1939.

Eslick & Hagan, of Pulaski, for appellants May.
R. E. Lee, of Pulaski, for appellee Abernathy.

## STATEMENT OF THE FACTS.

CROWNOVER, J.   This is a suit to establish the boundary line between the lands of the complainants and the defendant, and for an injunction to enjoin trespass on the tract of land and the obstruction of the road and to protect their possession.

The record is entirely too large and out of proportion to the amount involved, which increased the costs and caused the court unnecessary work.

The complainants May and the defendant Abernathy deraign title from a common source, and each party admits that the other party has title to his tract.   The complainants May's east boundary is the defendant Abernathy's west boundary.

The defendant Abernathy admits that the Mays have possession of the interlap, but contends that the possession is permissive, and that he has the legal title.

The Mays contend that the boundary line is along the fence, and they insist that it was fixed by a written agreement entered into by them and the defendant, and that they have acquired title to the strip of land in dispute by adverse possession.

The farm of Butler Abernathy, deceased, in Giles County, was subdivided into three tracts and sold by the acre at auction by his devisees, in October, 1919.   Tract No. 1, containing 68 acres, was bought by A. Samuel Abernathy at the price of $70 per acre; tract No. 2, supposed to contain 45 acres, was bought by B. F. McGrew, who later sold it to A. Samuel Abernathy; and tract No. 3, containing 41.2 acres, was purchased by S. A. and C. A. May at the price of $70 per acre.

The following is a map of the lands showing the approximate location of the respective tracts, not drawn to scale:

Ed Note.—Red line referred to is shown thus ▨
Blue line referred to is shown thus ░

A survey of the land was made by Topp Newbill before the sale, which survey is filed in the record. Deeds were executed according to that survey, describing the boundary lines, which deeds were accepted by the grantees and the purchase price paid.

The black line (C-1, D, E) on the above map correctly sets forth the calls of the deeds for which defendant Abernathy contends. The red line (O, C, X) is the line along near the fence contended for by the Mays. The blue line represents the creek.

The deeds provide for a road, in controversy, along the line G to C-1 in the above map, as an outlet to tract No. 3.

There is a spring at the point O from which a branch runs south, on the east side of the road, shown in blue on the above map.

The complainants May contend that on the day of the sale, just before the auction was held, the auctioneer moved the northeast corner stake of tract No. 3 from C-1 east 50 feet to C, announcing that C was the corner of tract 3, that the object was to include within the boundaries of tract 3 a part of the branch in order to supply water for live stock, stating that a survey would be made on the next day fixing the line and they would have to pay for only the land actually received; and they insist that their northeast corner is at C instead of at C-1 as shown by the deeds.

No survey was made on the next day, as announced, and deeds were executed containing descriptions according to the previous survey, ignoring the corner attempted to be established by the auctioneer, which deeds were accepted without objections.

Abernathy purchased tract 2 from McGrew in 1920. There was no fence between that tract and the Mays' tract. The boundary line between them was the line A to C-1. Abernathy and the Mays undertook to construct a fence along the boundary. Abernathy began building the fence at A and the Mays began at C-1. They met at B, both sides missing the boundary line described in the deeds.

In 1925 Abernathy had a survey made by McKissack of tract 2 and it was discovered that tract 2, with the wire fence as its southern boundary, contained only 40.26 acres. Abernathy had paid for 45 acres. He demanded reimbursement for the 4.74 acres shortage. The Butler Abernathy heirs agreed to pay him $465.50 if he would convey to the Mays the land between this wire fence erected by them and the line described in the deed as the boundary line between tracts 2 and 3. This land was in the shape of a triangle and contained 2.26 acres. Its corners on the map are A, B and C.

A. Samuel - Abernathy, the heirs of Butler Abernathy, and the Mays entered into the following agreement:

"In the matter of the settlement of the claim of A. Samuel Abernathy against B. F. McGrew, and against the widow and children of Butler Abernathy, deceased, or against S. A. and C. A. May, in consideration of the sum of $465.50, paid by the widow and children of the said Butler Abernathy to the said A. Samuel Abernathy, the receipt of which is hereby acknowledged, the same having been paid through their Trustee, the Peoples Bank of Pulaski, Tennessee, the said A. Samuel Abernathy forever releases all of the above named parties from any liability or moneyed compensation growing out of the various transactions represented in and by the deeds of Mrs. Ophelia K. Abernathy and others to B. F. McGrew, of record in Deed Book 83, page 512; of the same grantors to S. A. and C. A. May by deed of record in Deed Book 84, page 54, in the Register's Office of Giles County; and of the deed of B. F. McGrew to A. Samuel Abernathy, of record in Deed Book 85, page 1, and of Mrs. Ophelia K. Abernathy and others, by deed of record in Deed Book 84, page 534, to which reference is here made. This is a full settlement of all matters growing out of these several transactions, and in consideration of which the said A. Samuel Abernathy, joined by his wife, is to convey to S. A. and C. A. May a tract of 2.26 acres of land conveyed to the said A. Samuel Abernathy under the B. D. McGrew deed, which was intended to be conveyed to the said S. A. and C. A. May but inadvertently the line was so changed as not to embrace the same. This land is located in the 8th Civil District of Giles County, Tennessee, and is on the dividing line between lots Nos. 2 and 3 of the subdivision of the Butler Abernathy lands as fully described in the deeds hereinabove referred to. This tract of land really belongs to tract No. 3 and it was so intended to belong to the same, but was conveyed in tract No. 2 and the line as really intended to be fixed and as fixed by this agreement and as will be fixed, and the little strip

of land in controversy so conveyed by and according to the correct line between tracts Nos. 2 and 3 of the subdivision of the Butler Abernathy lands. The said A. Samuel Abernathy and his wife are to make and execute a warranty deed conveying said strip of land in controversy to the said S. A. and C. A. May, said deed to contain the usual covenants and warranty, and free from homestead, and this land is to be conveyed in consideration of the $465.50 paid under a separate agreement to A. Samuel Abernathy by Mrs. Ophelia K. Abernathy and others. This payment is in full of all matters, that is, for the tract of land, taxes, rents and any question of surveys, building of fences, etc., and is a full, final and complete settlement relating to and growing out of these several transactions.

"This the 25th day of April, 1925."

Abernathy and wife executed a deed conveying the 2.26 acres (the triangle, A, B, C) to the Mays.

This conveyance placed the east corner of the triangle at C instead of at C-1 and described the south boundary of the triangle as 1910 feet long, which was 50 feet longer than the line described in the original deeds to McGrew and the Mays. The survey made to fix this boundary recognized C as the northeast corner of tract No. 3, instead of C-1, the corner according to the deeds.

But this conveyance does not in any way affect the boundaries as described in the former deeds to tracts Nos. 1 and 3, except as stated in the deed to the 2.26 acres.

There is now no disagreement about the line between tract 2 and tract 3.

The Mays contend that the stake erected by the auctioneer at C, in the wire fence, is a monument in their line; that that wire fence (O, C, X) should be the east boundary of tract 3; that the wire fence now standing, along the red line on the map, is the same fence. They further contend that this boundary line was in dispute at the same time as the line between tracts 2 and 3; that Abernathy orally agreed, in 1925, that the fence (along the red line) should be fixed as the boundary between tracts 1 and 3, which resulted in the written agreement, dated April 25, 1925, which settled both disputed boundaries; and that they have acquired title to the land between the black line and the red line by adverse possession, and are entitled to an injunction to protect their possession.

Abernathy denies that an oral agreement as to the line was entered into and that it was included in the written agreement, and contends that the line is fixed by the calls of his deed and is the black line, C-1, D, E. He admits that the Mays are in possession of the disputed tract, up to the fence on the red line, but says he gave them permission to move this fence temporarily so as to straighten the fence and to give them water for pasture of their live stock. The defendant Abernathy insists that later the complainants denied his title to this strip of land, and he began to tear down the fence at the northeast corner of tract 3, when the Mays filed this bill seeking to have

their east boundary line settled, as they contended, from O to C to X, and to enjoin the defendant Abernathy from tearing down the fence and from obstructing the road between tracts 1 and 2. They insisted that they had acquired title to the strip of land under their deed and by adverse possession, and that the defendant had agreed on this line when the compromise agreement was made. They did not ask that their deed be reformed.

The defendant Abernathy filed a long answer setting up the contentions as hereinabove stated.

The Chancellor found that it was the intention of the parties to place the northeast corner of tract 3 at C, and ordered a surveyor to locate C and a line from C to D, and reserved all other matters until the surveyor should make his report.

The surveyor reported that the northeast corner of tract No. 3 was at C and that he ran a line from C to D to E, which added to the Mays' tract No. 3 the small triangle, C to C-1 to D, 50x200x210 feet, and fixed the line from D to E, which report was confirmed by the Chancellor, and title to this little triangle was divested out of Abernathy and vested in the complainants. And he further decreed that the boundary line between tracts Nos. 1 and 3 was along the black line from D to E.

## OPINION.

As set out in the foregoing statement of facts this is a suit to establish the boundary line between complainants' and defendant's land and for an injunction to protect possession. The Chancellor held that the complainants were entitled to recover a little triangle of land, 50x200x210 feet, in the northeast corner of their tract, which extended out to the creek so as to give the complainants water, and he held that it covered the land designated by the auctioneer at the time of the sale, and he dismissed the complainants' bill in all other respects.

The complainants excepted to the decree, appealed to this court, and have assigned errors, which are, in substance, as follows:

(1) It was error for the Chancellor, after having found that the Mays' northeast corner was located at C, to direct the surveyor to locate a line from C to D; he should have directed the surveyor to run the line between tracts numbers 1 and 3 from C along the wire fence (on the red line).

(2) The Chancellor erred in failing to find and decree that Abernathy and the Mays orally agreed in 1925 that the fence on the red line should be their dividing line, and entered into the said written agreement of April 25, 1925, fixing the fence as the boundary line between tracts numbers 1 and 3.

(3) The Chancellor erred in failing to hold that the Mays had acquired title to this disputed strip of land, between the black line and the red line, by prescription, adverse possession, etc.

■ 1. The contention that the complainants had acquired title to this strip of land in controversy under their deed, is not well made. We hold that under the evidence and the surveys the correct boundary line is along the black line, G, O, C-1, D, E, and that the defendant Abernathy had the legal title to that strip of land after the deed conveying the 68 acres to him was executed, and the complainants' deed to tract number 3 does not cover the land in controversy.

■ The fact that the auctioneer removed the stake 50 feet east, out to C, did not establish the corner at C for the reason that he stated to the parties that a survey would be made the next day and each of the parties would pay only for the land conveyed to him. No survey was afterwards made, and the deeds were executed according to the original survey, ignoring that corner, and the parties accepted the deeds without objection, and have not asked that the deeds be reformed. There is nothing to show that the auctioneer had authority to change the corner. 6 C. J., 827, sec. 19. Where the calls are definite and clearly expressed and well understood, they should not be extended by verbal agreement. 9 C. J., 153, note 11; Gilchrist v. McGee, 9 Yerg., 455.

■ 2. The contention that the written contract settled the boundary line not only between tracts 2 and 3 but also between tracts 1 and 3, is not well made for the reason that the written agreement applies only to the boundary between tracts 2 and 3 and has no reference to the boundary between tracts 1 and 3.

■ 3. The contention that the complainants' title to the strip of land in controversy was perfected by both seven years' adverse possession under a registered deed and twenty years' adverse possession by prescription, is not well made for the reason that their adverse possession, if such they had, has not been held under a recorded color of title and they have not had twenty years' adverse possession so as to perfect the title by prescription.

4. The contention of the complainants that they are in possession and are entitled to an injunction to protect their possession, presents a serious proposition.

■ The requisites of a bill to quiet possession are that the complainant must have either a title or actual possession; actual possession being sufficient. Nason v. South Memphis Land Co., 138 Tenn., 21, 195 S. W., 761; Union Tanning Co. v. Lowe, 148 Tenn., 407, 255 S. W., 712; Scruggs v. Baugh, 3 Tenn. App., 256, 261.

This case depends upon the question whether the complainants' possession was hostile to the defendant when the bill was filed. The defendant admits that the complainants are in possession but insists that it is permissive, in that he gave them permission five years before the bill was filed to straighten the fence and run it down to the south boundary line so as to give them water for their live stock, and that when he found that they were claiming the land he then

sought to retake possession. The complainants emphatically deny this.

The doctrine of adverse possession is to be taken strictly, and must be made out by clear and positive proof, and not by inference; every presumption being in favor of a possession in subordination to the title of the true owner. Marr's Heirs v. Gilliam, 41 Tenn., (1 Cold.), 488, 500; Westmoreland v. Farmer, 7 Tenn. App., 385, 388; 1 Ency. of Evidence, 666.

In this case the complainants May, John Aymett, and Mr. Eslick testified that Abernathy agreed that the fence should be the line, and that they took possession of the land in controversy and claimed adverse possession to the fence. Their possession is not sufficient to perfect their title, but it is sufficient to show that they were in possession and claimed it adversely. Defendant Abernathy is the only witness who testified that the possession was permissive. He does not explain why he permitted them to straighten the fence and to build it all the way down to his south boundary line simply to give them access to the water for their live stock. But, on the other hand, it is hard to understand why he would give up 3.4 acres of his land that he had bought and paid for in order to settle the boundary between tracts numbers 2 and 3 when he had a just claim for shortage in tract number 2. However, there are four witnesses testifying to the fact that he agreed on the fence as the line and that they took possession of the land in dispute and are now holding it adversely to the defendant. This being true, they had a right to file this bill for an injunction to protect their possession. The defendant did not file a cross-bill in ejectment to recover on the strength of his legal title, hence, under the authorities above cited, the complainants are entitled to the injunction, and their assignments to the effect that the Chancellor erred in directing the survey and in holding that they were not entitled to an injunction to protect their possession out to the red line, O, C, X, must be sustained and his decree must be reversed and the injunction to this extent must be made perpetual.

The question about the road, the outlet from tract number 3 to G, seems to have been abandoned, as the Chancellor ignored it and no errors were assigned on this proposition.

It results that the decree of the Chancellor is reversed as above indicated and a decree will be entered accordingly in this court.

The costs of the cause including the costs of the appeal are decreed against the defendant Abernathy.

Faw, P. J., and Felts, J., concur.