ARTHUR R. MINOR and Wife, MADGE MINOR, Appellants, v. C. L. BELK, RUBY R. BELK, and PAUL K. LeDUKE, Trustee, Appellees.—360 S .W. (2d) 477.

Western Section. February 21, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

Rehearing on Denial of Writ of Certiorari Denied October 4, 1962.

214

Ricco Gatti, Jr., Rubert & Ewing, and William J. Ling, Memphis, for appellants.

Clyde P. West, Memphis, for C. L. Belk and Wife, Ruby R. Belk.

Benjamin Goodman, Memphis, for A. B. Murchison and Wife, Jennie Minor Murchison.

BEJACH, J. ■ This cause involves a suit by Arthur R. Minor and wife, Madge Minor, against C. L. Belk and wife, Ruby R. Belk, and Paul K. LeDuke, trustee, under provisions of a trust deed encumbering defendants' property, to require defendants to remove encroachments of said defendants from the land of complainants. For convenience, the parties will be styled as in the lower court, complainants and defendants. The suit started as one to settle a boundary dispute; but, after numerous amendments to the original bill and to the answer which was converted into a cross bill, the suit was changed to one in the nature of an ejectment suit. This was entirely proper, as both complainants and defendants deraign their titles from a common source, namely, James Madison Minor, who owned a 90 acre tract of land referred to as "the James M. Minor 90 acres". As a result of the amendments, defendants' grantors, A. B. Murchison and wife, Jennie Minor Murchison, were made parties. Several other parties, not now material to this litigation, were also added. All of the lands of both complainants and defendants constitute parts of said James M. Minor 90 acres. The 90 acre tract in question was part of the "Jacob Tipton 150 acres" and was conveyed to James M. Minor by deed dated November 4, 1908, which is recorded in Book 437, page 65, Register's Office, Shelby County, Tennessee. The deed to James M. Minor, in addition to other identification of the land conveyed, includes the following phrase: "including in this conveyance also

all the land enclosed or set off by the fences marking or supposed to mark the boundaries of said tract of 90 acres''. In this deed, also, the southwest corner of the 90 acres is fixed at the southeast corner of the ''Thomas Hickman 640 acres'', and same is described as the ''east side of the Thomas Hickman 640 acres''. It appears that the southeast corner of the Thomas Hickman 640 acres and the east side of same are the southeast corner, and the eastern boundary of Lots 1, 2, and 3 of the James Overton Subdivision, which was created out of same, by Plat recorded January 29, 1869, in Plat Book J, page 12, Register's Office of Shelby County, Tennessee. The 90 acre tract of James M. Minor, who died in 1932, was devised by his will to eight sons and daughters, one of whom was complainant Arthur R. Minor; and another of whom was Jennie Minor Murchison, one of defendants' grantors. In the settlement of the James M. Minor estate, complainant Arthur R. Minor received a deed to 12 acres, the western part of which, adjoining the land of defendants, he still owns. A correction deed, recorded in Record Book 2799, page 133, Register's Office of Shelby County, Tenn., describes the property conveyed to him, as follows:

''BEGINNING at a point in the north line of the Hindman Ferry Road now also known as Raleigh-Frazer Road, at a stake 100 feet east of the southwest corner of the aforesaid J. M. Minor Estate Tract of 90 acres; thence eastwardly with the north line of the said Hindman Ferry Road or Raleigh-Frazer Road, 252.5 feet; thence northwardly parallel with the west line of the aforesaid J. M. Minor estate tract of 90 acres 2009 feet, more or less, to the north line of the aforesaid 90 acre estate tract; thence westwardly with the north line of the aforesaid

estate tract 352.5 feet to the west line of the said estate tract; thence southwardly with the west line of said estate tract 702.2 feet to the north line of the Murchinson 3 acre tract; thence eastwardly parallel with the north line of the Hindman-Ferry Road 100 feet to the northeast corner of the aforesaid Murchinson 3 acre tract; thence southwardly parallel with the west line of the J. M. Minor estate tract 498.05 feet; thence eastwardly parallel with the north line of the Hindman-Ferry Road 208.75 feet; thence southwardly parallel with the west line of the said J. M. Minor Estate Tract 208.75 feet; thence westwardly parallel with the north line of Hindman Ferry Road 208.75 feet; thence southwardly parallel with the west line of said J. M. Minor Estate Tract 600 feet to the point of BEGINNING.''

Jennie Minor Murchison and A. B. Murchison, her husband, also still own a track of 1 acre adjoining on the east side the land which they conveyed to defendants. The 3 acre tract of land, now owned by defendants, was, in the settlement of the James M. Minor estate, conveyed to Ben T. Minor, a son of James M. Minor, who sold same to William H. Ivie on April 14, 1938. Ivie, who is now deceased, conveyed same June 9, 1938 to Allie Minor Thomas, who on May 9, 1941 conveyed it to A. B. Murchison and wife, Jennie Minor Murchison. By deed dated June 5, 1950, recorded in Record Book 2553, page 636, Register's Office of Shelby County, A. B. Murchison and Jennie Minor Murchison, his wife, conveyed same to C. L. Belk and wife, Ruby R. Belk. In this deed, defendants' land is described as follows:

"Three acres of land on the north side of the Hindman Ferry Road in the Second Civil District of

Shelby County, Tennessee, and being a part of the 90 acres, more or less, of land conveyed to J. M. Minor now deceased, by warranty deed of record in Book 437, page 65 of the Registers Office of Shelby County, Tennessee, aforesaid 3 acres being further described as:

"Beginning at a stake in the southwest corner of the aforesaid J. M. Minor estate tract, thence eastwardly with the north line of the Hindman Ferry Road 100 feet, thence northwardly parallel with the west line of said J. M. Minor estate tract 1306.8 feet, thence westwardly parallel with the north line of the said Hindman Ferry Road 100 feet, thence southwardly with the west line of the said J. M. Minor estate tract 1306.8 feet to the point of beginning, and being the same property conveyed by warranty deed dated May 9, 1941 from Mrs. Allie Minor Thomas to first parties hereinof record in Book 1668 page 584 in said Register's Office."

Defendants purchased said three acres through William H. Ivie, a real estate agent, who had formerly owned same. According to the testimony of defendant C. L. Belk, Ivie pointed out to him as the western boundary of same, an old fence row, evidenced by bits of wire embedded in a line of trees. After purchasing the 3 acre tract, defendant Belk, assuming that the old fence line was his western boundary, undertook to measure off 100 feet eastwardly from same, and built a fence there. He also built a house and a pumphouse on the eastern part of the land thus measured off by him. According to complainants, all of the pump and pumphouse and part of the residence, are located on complainant's land. At

the time defendant measured the land and built his fence and other improvements, no survey had been made by either complainant or defendants; but, even before a survey was made, according to the testimony of complainant, defendant Belk admitted that the fence, which is built in an eliptical pattern, encroached on complainant's property, and agreed to remove same at complainant's request. On or about February 10, 1955, complainant gave to Person Homes, Inc., a Tennessee corporation, an option to purchase all of his land, which option was made irrevocable on or about May 17, 1955. In connection with this option and the exercise of same, Person Homes, Inc. caused a survey to be made by the Pickering Engineering Co. of Memphis, Tennessee, which survey showed that defendants had enclosed within their eastern fence a strip of complainant's land, which at the Frayser-Raleigh Road, formerly known as the Hindman Ferry Road, is 30 feet wide. At the northern end of same, the strip is 43 feet wide, and at its widest point, near the middle, it is 64.6 feet wide.

After demand for possession of this strip of land, along with a demand that defendants remove their improvements from same had been refused by defendants, complainants instituted this suit. After a hearing on oral proof, which lasted from February 15, 1961 to February 21, 1961, the Chancellor ruled that defendants' western boundary is the old fence line shown on the survey by Pickering Engineering Co., dated November 28, 1955. He dismissed both the original bill as amended, and the cross bill filed by defendants: From the decree entered March 2, 1961, we quote as follows:

"From all of which the Court finds that complainants' bill, and amended and supplemental bill, are not

sustained by the proof. That the west boundary line of the J. M. Minor Estate Tract referred to in the deed from A. B. Murchison and wife Jennie Minor Murchison to C. L. Belk and wife Ruby R. Belk, of record in Book 2553, page 636 of the Registers Office of Shelby County, Tennessee, is the old fence line which was set out in the survey by Pickering Engineering Co., dated November 28, 1955.''

Complainants duly excepted to the Chancellor's decree, prayed, and have perfected their appeal to this Court. A bill of exceptions embodying the testimony adduced at the hearing was seasonably filed and made part of the record.

In this Court, complainants, as appellants, have filed six assignments of error, which are as follows:

## "ASSIGNMENTS OF ERROR

### I

"That the Chancellor erred in holding as follows:

"That the west boundary line of the J. M. Minor estate tract, referred to in the deed from A. B. Murchison and Wife, Jennie Minor Murchison, to C. L. Belk and Wife, Ruby R. Belk, of record in Book 2553, Page 636, of the Register's Office of Shelby County, Tennessee, is the old fence line, which is set out in the survey by Pickering Engineering Company, dated November 28, 1955. And further erred in dismissing the complainant's amended bill.''

### II

"That the Chancellor erred in holding that the boundary line had been changed by acquiesence of

the predecessors of the present parties in title. Because there was no question of acquiesence, all parties recognized the true boundary line and that no one was claiming or attempting to claim that the boundary line was different or desired to change the same."

### III

"The Chancellor erred in permitting the defendant over the complainant's objections to introduce testimony to vary and enlarge the terms of his deed. Because his deed was unambiguous, clear and precise and calling for land that could be ascertained without the necessity of parol and extrinsic evidence."

### IV

"That the Chancellor erred in failing to sustain the complainant's bill and adjudging the complainant's ownership and possession to the land described in his deed and in not requiring the defendant to remove himself and his encroachment off of complainant's grant."

### V

"The Chancellor erred in holding that the defendant was entitled to more than the acreage described in his deed. And in creating a no-man's land between the defendants so-called west boundary line and the true boundary line of the Minor 90 acre tract on the west side."

## VI

"That the Chancellor erred in permitting the defendant to introduce evidence varying the terms of his grant and contradicting his deed, because under the law the defendants proof was inadmissible, illegal, and the defendant under the law is estopped to try to alter or contradict the terms of his grant, when the same is clear and unambiguous, and no proof of either fraud or mistake but, on the contrary, defendant was, and still is, satisfied with the deed and the description of the land granted in the deed."

These assignments of error present adequately all of appellants' contentions. We deem it unnecessary to discuss each of them separately, but our opinion will consider all of them, so far as we think same necessary for disposition of this cause.

According to the contention of defendants, which contention was approved by the Chancellor, the old fence line, which at the greatest distance is 41 feet east of the eastern boundary of Lots 1, 2, and 3 of the James Overton Subdivision, was fixed, by agreement or acquiescence, as the boundary between the property of R. A. Gerlach and the former owners of the James M. Minor 90 acre tract. R. A. Gerlach acquired the land west of defendants' property by deed of J. W. Falls and wife dated January 3, 1927. This conveyance described that property as being, "east part of Lots 1, 2, and 3 James Overton Subdivision in Hickman 640 acre being more particularly described as follows:

"BEGINNING at a point in the east line of Lot 1 20 feet north of the center line of Old Point Road

(now Frayser-Raleigh Road); thence north with the east line of Lots 1, 2, and 3 a distance of 2798 feet to a gas pipe monument in the north line of Lot 3; thence westwardly to said north line 468 feet to a stake; thence south parallel with the east line of tract herein conveyed 2781 feet to a point 20 feet north of center line of Old Point Road (now Frayser-Raleigh Road); thence east parallel with the center line of Old Point Road (now Frayser-Raleigh Road) 468.5 feet to the point of beginning, being the east 30 acres of the first described property conveyed to the said J. W. Falls by Mrs. Sarah M. Crump in warranty deed dated November 5, 1926 and recorded in Book 1091, page 283 of the Registers Office of Shelby County, Tennessee."

Evidently R. A. Gerlach, like defendant, was uncertain as to where his line was located and built a barn, part of which was east of his true line. He also built a milk shed entirely east of his true east line. To this milk shed he later added an addition and resided in it, together with a woman named Etta Byard, to whom he willed for life five acres of his 30 acre tract which he had not previously sold, with remainder to the Porter Home and Leath Orphan Asylum of Memphis. The Porter-Leath Home has filed in this record a disclaimer to all land east of the east line of Lots 1, 2, and 3 of the James Overton Subdivision. Gerlach and Etta Byard were living in the milk-shed house at the time defendant purchased his land. Gerlach died in 1951 or 1952, before the present suit was filed. Etta Byard was alive at the time the suit was filed and was made a party thereto by defendants' cross bill; but she died while the suit was pending, and, as she had only a life estate in the

property willed to her, her connection with the suit is no longer material.

On September 19, 1946, R. A. Gerlach conveyed a portion of his property to H. M. Hall, who planned a subdivision and, for that purpose, had the property surveyed by J. S. Harris, Engineer. This survey is dated November 7, 1947. It shows the east boundary of the Gerlach property as being the J. M. Minor west boundary line, and Gerlach signed this survey, thus evidencing his approval of same. As part of the subdivision, Hall established a road known as Hallbrook Road, running north and south through the middle of the property conveyed to him, which road left a tract of land 209.25 feet east of the east side of Hallbrook Road, extending to the east boundary line of the property owned by Hall and that still retained by Gerlach. Subsequently, Gerlach sold portions of the land which he had retained to R. C. Smith, to T. S. Brawley, and George Mabrey. Later, various parcels of same were acquired by Mrs. J. C. Gammon, W. B. Davis, Jr., Walter and Mary L. Davis, and Fred and Hazel Rish. All of these parcels have their beginning point in the east line of Hallbrook Road and run east 209.25 feet to the east boundary of the Gerlach tract, which is the west boundary of the Minor tract, as shown by all plats, deeds and surveys. None of these owners, some of whom were made parties to this suit, claim any land east of the line 209.25 feet east of Hallbrook Road.

Furthermore, the defendant C. L. Belk, after he had acquired his property on March 14, 1952, conveyed to the Memphis Light, Gas & Water Division a five foot easement across the western portion of his land for

the installation of utility poles,—from which service was to be had for both defendant and Gerlach. This easement is described as being "five feet wide across the western part of a tract of land conveyed to C. L. Belk and wife, Ruby R. by deed of record and described in Book 2553, page 636 in the Register's Office of Shelby County, Tennessee"; and recites further, "The center line of this easement is located as follows: 'Beginning at a point in the south line 2.5 feet east of the west line'." A utility pole was erected 2½ feet east of the iron stake which marks the southwest corner of the Minor 90 acre tract and the southeast corner of Lots 1, 2, and 3 of James Overton Subdivision. In addition, defendant Belk granted to the City of Memphis an easement on the south end of his property five feet wide for widening the Frayser-Raleigh Road. This easement was executed March 29, 1954 and recognizes the beginning point of his land on the north side of Frayser-Raleigh Road as being the point described in his deed, the iron stake described therein. The deed conveying this easement contains the following clause, describing the property off of which same is to be taken, as follows: "Property located on the north side of Frayser-Raleigh Road 209.25 feet east of the east line of Hallbrook Road", and defendant warranted his right to convey same. That defendant Belk was familiar with the location of the iron stake which marked his southwest corner and the southeast corner of Lots 1, 2, and 3 of the Overton Subdivision is indicated by his own testimony, from which we quote, showing that when he purchased the property, the real estate agent pointed out the iron pipe as a monument, as follows:

"Q. Did you look for any stakes in the ground out there?

"A. He showed me the stake.

"Q. An iron pipe?

"A. Down at the road.

"Q. Down in front.

"A. Yes, sir.

"Q. It is some distance west of where the telephone pole is now?

"A. Two and a half feet.

"Q. Two and one half feet west of the telephone pole?

"A. Yes, sir.

"Q. That is supposed to be the beginning point?

"A. The southwest corner.

"Q. The southwest corner of the Minor tract; is that right?

"A. That's right."

This testimony was properly admissible as evidence showing the location of monuments or boundary markers. Thompson on Real Property, Vol. VI, sec. 3285, page 464.

It is true there is testimony in the record by Mrs. Virginia Wamble, sister of Etta Byard, and by Mrs. G. R. Green that they were familiar with the Gerlach property as far back as 1927, and that the eastern boundary of the Gerlach property was along the fence line

contended for by defendant. Aside from the fact, however, that this testimony is somewhat vague and indefinite, we think it was improperly admitted in evidence, being oral testimony offered to vary the terms of a written instrument which is clear and unambiguous on its face. Brown v. Brown, 45 Tenn. App. 78, 320 S. W. (2d) 721; Littlejohn v. Fowler, 45 Tenn. 284; Marron v. Scarbrough, 44 Tenn. App. 414, 451, 314 S. W. (2d) 165; McGannon v. Farrell, 141 Tenn. 631, 214 S. W. 432; Litterer v. Wright, 151 Tenn. 210, 268 S. W. 624; McQuiddy Printing Co. v. Hersig, 23 Tenn. App. 434, 134 S. W. (2d) 197.

■ Also, in the instant case, any representations claimed by defendant to have been made to him with reference to his western boundary by real estate agent Ivie, must be deemed to have been merged into the written contract or deed executed to him by Mr. and Mrs. Murchison. This is not merely a rule of evidence, but is a rule of substantive law. Wilson v. Wilson, 23 Tenn. App. 244, 130 S. W. (2d) 140; see also Marron v. Scarbrough, 44 Tenn. App. 414, 453, 314 S. W. (2d) 165.

The defendants' deed is clear and unambiguous, and with it before him, and no outside evidence except, perhaps, for identification of the stake at the southwest corner of the land conveyed by same, any competent surveyor could have located his land and established the true boundaries. All surveyors who surveyed either the Minor 90 acre tract or the Gerlach lands found, without difficulty, the necessary monuments and correctly located all boundaries.

On this subject, 16 Am. Jur.—Deeds, sec. 263, page 586 says:

"The test is said to be whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can locate the land and establish the boundaries."

The case of May v. Abernathy, 23 Tenn. App. 236, 130 S. W. (2d) 135, involves a case, which on its facts, is, in many respects, quite similar to the case at bar. In that case, the complainant May was in possession of land which, according to the deed of defendant Abernathy, had been conveyed to him. In that case, as in the instant case, both parties deraigned title from a common source. Complainant May sought to establish the boundary and to enjoin trespass by the defendant Abernathy. Both tracts of land had been purchased at an auction, at which the auctioneer undertook orally to change the location of a corner under promise of a survey which was never made. Abernathy's deed, however, showed the corner to be where he claimed. The Court of Appeals, Middle Section, reversed the decree of the lower court which had decided in favor of May. From the opinion of Crownover, J., we quote as follows:

"The contention that the complainants had acquired title to this strip of land in controversy and under their deed, is not well made. We hold that under the evidence and the surveys the correct boundary line is along the black line, G, O, C-1, D, E, and that the defendant Abernathy had the legal title to that strip of land after the deed conveying the 68 acres to him was executed, and the complainants' deed to tract number 3 does not cover the land in controversy.

"The fact that the auctioneer removed the stake 50 feet east, out to C, did not establish the corner at C for the reason that he stated to the parties that a survey would be made the next day and each of the parties would pay only for the land conveyed to him. No survey was afterwards made, and the deeds were executed according to the original survey, ignoring that corner, and the parties accepted the deeds without objection, and have not asked that the deeds be reformed. There is nothing to show that the auctioneer had authority to change the corner. 6 C. J., 827, sec. 19. Where the calls are definite and clearly expressed and well understood, they should not be extended by verbal agreement. 9 C. J., 153, note 11; Gilchrist v. McGee, 9 Yerg. 455.

\* \* \* \* \* \*

"The contention that the complainants' title to the strip of land in controversy was perfected by both seven years' adverse possession under a registered deed and twenty years' adverse possession by prescription, is not well made for the reason that their adverse possession, if such they had, has not been held under a recorded color of title and they have not had twenty years' adverse possession so as to perfect the title by prescription.

\* \* \* \* \* \*

"The doctrine of adverse possession is to be taken strictly, and must be made out by clear and positive proof, and not by inference; every presumption being in favor of a possession in subordination to the title of the true owner. Marr's Heirs v. Gilliam, 41 Tenn. 488, 1 Cold, 488, 500; Westmoreland v. Farmer, 7

Tenn. App. 385, 388; 1 Ency. of Evidence, 666.'' May v. Abernathy, 23 Tenn. App. 242-243, 130 S. W. (2d) 139.

 In the instant case, defendants' claim of adverse possession is not tenable, because they have been in possession less than seven years. Any effort to tack the five years of possession which defendants did have prior to the filing of this suit onto the possession of R. A. Gerlach and/or Etta Byard is likewise futile, because there is no positive proof in the record that either Gerlach or Byard claimed adversely. Indeed, positive evidence in the record tends to negative such claim. In addition to the conveyance of twenty acres to H. M. Hall, and the establishment by Hall of Hallbrook Road 209.25 feet west of Gerlach's east line, which is also defendants' west line and the west line of the Minor 90 acre tract, Gerlach conveyed portions of the land which he had retained to several other people, viz., R. C. Smith, T. S. Brawley, George Mabrey, Mrs. J. C. Gammon, W. B. Davis, Jr., Walter and Mary L. Davis, and Fred and Hazel Rish, all of which conveyances were described as being on the east side of Hallbrook Road, and extending back 209.25 feet eastwardly from same.

 The general rule is that in determining boundaries resort is to be had, first, to natural objects or landmarks, because of their permanent character, next to artificial monuments or marks, then to boundary lines of adjacent owners, and then to courses and distances. Pritchard v. Rebori, 135 Tenn. 328, 332, 333, 186 S. W. 121. When all of these tests are applied to the facts of the case at bar, it is clear that complainant must prevail, and that defendants' contention must fail. In Windborn

v. Guinn, 7 Tenn. App. 60, our own Court, speaking through Senter, J., held in a boundary dispute case that a fence, temporary in nature, erected at a time when there was no dispute over the boundary line, which made no attempt to follow the proper boundaries, does not constitute an agreed boundary.

On behalf of defendants, it is contended that complainant's sale to Person Homes, Inc., and its subsequent sale of the property to the Shelby County Board of Education, under a deed held in escrow pending the outcome of this litigation, are champertous transactions. We consider this contention immaterial. By the amended and supplemental bill filed in this cause January 14, 1957, Person Homes, Inc. became a party to this suit. If complainant Arthur Minor's conveyance to Person Homes, Inc. did not convey a good title, then the title is still in him. In any event, he agreed to cooperate for mutual benefit in adjusting the lines and contracted to cooperate in clearing the title. Both Arthur Minor and Person Homes, Inc. are before the Court in this cause. We, therefore, consider defendants' claim with reference to champerty to be without merit.

For the reasons hereinabove stated, we think that all of appellants' assignments of error must be sustained and the decree of the lower court reversed. A decree may be entered in this Court fixing the western boundary lines of defendants along the line A B, as shown on the survey made by Dwight L. Brown for Pickering Engineering Co., dated November 28, 1955, and their eastern boundary line, which is complainants' western boundary line, parallel thereto 100 feet east of said line A B, which will be strictly in accord with the calls of defendants'

deed. After the entry of such decree, this cause will be remanded to the Chancery Court of Shelby County for enforcement and supervision of this Court's decree. If necessary, a writ of possession will issue to put complainants together with A. B. Murchison and Jennie Minor Murchison, into possession of the land east of defendants' eastern boundary line hereby established.

The costs of the cause, including those of the lower court accrued to date, as well as those of the appeal, will be adjudged against the defendants, C. L. Belk and wife, Ruby R. Belk.

Avery, P. J. (W. S.), and Carney, J., concur.