# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

December 22, 1998

Cecil W. Crowson
Appellate Court Clerk

W. J. CROWELL and wife,　　　　)
MILDRED P. CROWELL,　　　　　)
　　　　　　　　　　　　　　　)
　　Plaintiffs/Appellants,　　　　　)
　　　　　　　　　　　　　　　)　　Bedford Chancery
　　　　　　　　　　　　　　　)　　No. 17,899
VS.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)　　Appeal No.
　　　　　　　　　　　　　　　)　　01A01-9609-CH-00431
LARRY DON HASTY and wife,　　)
CONNIE MARIE HASTY,　　　　　)
　　　　　　　　　　　　　　　)
　　Defendants/Appellees.　　　　)

APPEAL FROM THE CHANCERY COURT FOR BEDFORD COUNTY
AT SHELBYVILLE, TENNESSEE

THE HONORABLE TYRUS H. COBB, CHANCELLOR

For the Plaintiffs/Appellants:　　　　　For the Defendants/Appellees:

C. Kelly Wilson　　　　　　　　　　Andrew C. Rambo
Shelbyville, Tennessee　　　　　　　Shelbyville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE
**O P I N I O N**

This appeal involves a dispute between neighbors over the location of approximately five acres of property along Old Virginia Road in rural Bedford County. The owners of the property filed suit in the Chancery Court for Bedford County alleging that their neighbors were trespassing on the property and requesting a judicial determination of the property's location. Their neighbors asserted that they owned the disputed property and that the plaintiff property owners were mistaken about the location of their tract. Following a bench trial, the trial court determined that the plaintiff property owners' tract was actually over 1,150 feet to the south of where they thought it was and that the plaintiff property owners had not established a claim to the disputed property by adverse possession. On this appeal, the plaintiff property owners assert that the evidence does not support the trial court's decision regarding the location of the property and their adverse possession claim. We disagree and, therefore, affirm the judgment.

## I.

W. J. Crowell is a general contractor and real estate broker who lives in Shelbyville. In the mid-1960s, he began purchasing property on Old Virginia Road in the vicinity of Unionville. He first became interested in a 14-acre tract owned by Cecil and Betty Compton. When Mr. Crowell discovered that the property was separated from Old Virginia Road by approximately 290 feet, Mr. Compton recommended that he discuss buying the strip of land between the eastern boundary of the 14-acre tract and the road from W. H. Bomar. Mr. Bomar agreed to sell the property to Mr. Crowell "for a price." Thus, on March 18, 1966, W. J. and Mildred P. Crowell purchased the 14-acre tract from the Comptons.[1] On March 22, 1966, the Crowells purchased a 5-acre tract from W. H. and Ruberta C. Bomar, believing that the western boundary of this tract ran along the eastern boundary of the 14-acre tract they had purchased four days earlier from the Comptons.

---

[1]This deed was referred to throughout the trial as a "boundary deed" because the only description of the property it contained was "Bounded on the north by George Sanders; east by George Sanders; south by Earnest Haynes, and west by Lem Clardy, containing fouteen [sic] acres."

In 1967, Mr. Crowell purchased two more tracts of property in the area that he believed were contiguous with the two tracts he had purchased in 1966. In January 1967, he acquired a tract behind the tract he had purchased from the Comptons in March 1966. In September 1967, he purchased from Ernest Haynes a 15-acre tract adjacent to the 14-acre tract he had purchased from the Comptons. The northern boundary of this tract is the southern boundary of the 14-acre tract purchased from the Comptons. The western boundary of the tract is the eastern boundary of the property Mr. Crowell purchased in January 1967. Mr. Crowell also believed that the eastern boundary of this tract was the western boundary of the tract he had purchased from Mr. Bomar on March 22, 1966.[2] Mr. Crowell removed fences and cleared portions of the property. He used the property primarily for cutting cedar trees and hunting deer.

In October 1970, W. H. Bomar conveyed a tract of property to Haile Selassie and Frances Marie Arnold. This tract contained approximately 59 acres, excluding the 5-acre tract that Mr. Bomar had conveyed to Mr. Crowell on March 22, 1966. Approximately 46 acres of this tract was immediately to the north of the tract Mr. Crowell purchased from the Comptons in March 1966. In fact, the southern boundary of the Arnolds' tract was the northern boundary of the tract the Crowells purchased from the Comptons in March 1966. The remainder of the Arnolds' tract, except for the property conveyed to the Crowells in March 1966, was a strip of property between 270 and 297 feet wide and between 1,985 and 2,100 feet long running along Old Virginia Road.

On April 3, 1980, the Arnolds' property was sold at the courthouse steps as a result of the Arnolds' divorce proceeding. Larry Don and Connie Marie Hasty purchased the property, and on April 7, 1980, received a deed to the 59.1 acre tract less the property that had been conveyed to the Crowells in March 1966. Mr. Hasty, a licensed engineer, believed that the tract was essentially square in shape and hired Rex Northcutt to survey the property. At this point, Mr. Hasty discovered that the property he had purchased included that long, narrow, 13-acre strip of property

_____

[2]Mr. Crowell later purchased another 21-acre tract to the south of the other four tracts. This tract's northern boundary is the southern boundary of the tract he purchased in January 1967. A portion of this tract's southern boundary abuts Highway 41A.

running adjacent to Old Virginia Road. The survey also revealed that the tract Mr. Crowell had purchased from Mr. Bomar was actually on the southern portion of this strip rather than the northern portion where Mr. Crowell believed it had been.

Relying on this survey, Mr. Hasty began to erect a fence along Old Virginia Road between the road and the 14-acre tract Mr. Crowell had purchased from Mr. Compton in March 1966. On June 26, 1985, Mr. Crowell sent Mr. Hasty a registered letter stating: "It has come to my attention that you have recently erected a barbed wire fence on my property on Old Virginia Road. This letter is to request you to remove this fence from my property within ten days, or I will take the necessary action to move it myself." Mr. Hasty did not respond to this letter, and neither Mr. Crowell nor Mr. Hasty ever discussed the letter. Since purchasing and fencing in the property, Mr. Hasty has used it as a pasture and for growing hay.

In May 1992, the Crowells filed suit against the Hastys in the Chancery Court for Bedford County alleging that the Hastys were trespassing on their property. They also requested $60,000 in damages and a declaration of the location of the boundary lines between the parties' land. The Hastys denied that they were trespassing and asserted that the location of the Crowells' property was further south than the Crowells believed it was. After joining the Bomars as third-party defendants, the trial court conducted a bench trial in September 1995. During the trial, the Hastys introduced Mr. Northcutt's survey showing the location of the long, narrow strip of property and the location of where Mr. Crowell believed his 5-acre tract was located (Tract B) as well as the location of where the surveyor had determined that this tract was actually located (Tract A). *See* Appendix One to this opinion. In November 1995, the trial court filed a memorandum concluding that Tract A was the tract the Crowells had purchased from the Bomars on March 22, 1966. The trial court also dismissed the Crowells' adverse possession claim.

## II.

We turn first to the Crowells' assertion that the trial court erred by determining that the tract they purchased from Mr. Bomar in March 1966 was Tract A rather than Tract B. They insist that the trial court's determination is inconsistent with their deed and with the undisputed intentions of Messrs. Crowell and Bomar. Regrettably, the

numerous clerical errors in the pertinent deeds create ambiguities over which reasonable persons might differ. We find, however, that the most sensible interpretation of the deeds in light of the monuments in the field is the one adopted by the trial court.

The Crowells' challenge to the trial court's conclusion concerning the location of the tract they purchased from Mr. Bomar is based on the second call in their March 22, 1966 deed which describes the western boundary line of their tract as follows: "thence in a Northerly direction with Haynes' East boundary line and with the East boundary line of Crowell." They insist that this boundary line could only be the western boundary line of Tract B because, at the time of the conveyance in 1966, only the western boundary line of Tract B could have coincided with the eastern boundary line of property owned by both the Hayneses and the Crowells. This point is well-taken but is also inconsistent with the location of the southern boundary of the property described in the first call.

The southern boundary line of the tract the Crowells purchased from the Bomars in March 1966 ran east-to-west along the northern boundary line of Thompson.[3] As the trial court found, the southern boundary line of the tract could be Thompson's northern boundary line only if the tract was located where the surveyor designated Tract A. To buttress the trial court's reliance on the reference to Thompson's boundary line, the surveyor also testified unequivocally that he found the hub and the pin marking both the southeastern and southwestern corners of the tract exactly where they should have been. He also pointed out that the description of the property began at the southeast corner of the tract originally conveyed to Mr. Bomar and that this point could only have been on the southernmost end of the property not 1,100 feet to the north.

As an aid in locating disputed boundaries, the courts first look to natural objects, then artificial monuments, then the boundaries of adjacent landowners, and finally to courses and distances. *See Pritchard v. Rebori*, 135 Tenn. 328, 332-33, 186 S.W. 121, 122 (1916); *Bramblett v. Runyan*, 631 S.W.2d 129, 131 (Tenn. Ct. App.

---

[3]In the words of the deed, "running thence in a Westerly direction with the South [sic North] property line of Thompson."

1981). In this case, the trial court based its decision on artificial monuments and the boundaries of adjacent landowners. Having reviewed this decision under Tenn. R. App. P. 13(d), we cannot say that the evidence preponderates against this decision.

In addition to their reliance on the second call establishing the western boundary line of the tract, the Crowells also point to the undisputed fact that both Mr. Crowell and Mr. Bomar intended to convey Tract B rather than Tract A. They argue that this intention, not evident on the face of the deed, should somehow trump the description of the property's boundaries in their deed. The parties' intent is generally derived from the calls in the deed. *See Mayse v. Lafferty*, 38 Tenn. (1 Head) 60, 61-62 (1858). However, adjoining property owners may agree upon the exact location of their common boundary lines where there is doubt about the location of the true line. *See Houston's Heirs v. Matthews*, 9 Tenn. (1 Yer.) 116, 118-19 (1826); *Winborn v. Alexander*, 39 Tenn. App. 1, 17, 279 S.W.2d 718, 725 (1954). They cannot change boundaries by parole agreement when the calls are definite and well understood. *See May v. Abernathy*, 23 Tenn. App. 236, 242, 130 S.W.2d 135, 139 (1939).

This record contains no evidence that the Crowells on one hand and either the Bomars, the Arnolds, or the Hastys on the other had any disagreement concerning the location of the boundary lines of their properties or that they entered into any explicit parole agreements concerning the location of their boundaries. Thus, there is no explicit parole agreement that prevents the Hastys from relying on the description of their property in the deed they received from the clerk and master in 1980.

**III.**

As a final matter, the Crowells assert that the trial court erred by failing to find that they had acquired title to Tract B by adverse possession either under Tenn. Code Ann. § 28-2-105 (1980) or by virtue of the common-law doctrine of prescription. We have determined that the Crowells have failed to carry their burden under either claim, first because they did not establish that they had assurance of title to the property they are now claiming and second because they have not possessed the disputed property adversely for twenty years.

## THE TENN. CODE ANN. § 28-2-105 CLAIM

Tenn. Code Ann. § 28-2-105 enables persons who have continually possessed property for seven years under an assurance of title to acquire fee simple interest in the property. A deed purporting to convey a fee simple estate is such an assurance of title, *see Southern Iron & Coal Co. v. Schwoon*, 124 Tenn. 176, 203-04, 135 S.W. 785, 792 (1911); *Sharp v. Vanwinkle*, 80 Tenn. 15, 19 (1883), even if the deed is invalid. *See Wallace v. McPherson*, 187 Tenn. 333, 339, 214 S.W.2d 50, 53 (1947); *Thurston v. University of N.C.*, 72 Tenn. 513, 519-20 (1880). For the purpose of Tenn. Code Ann. § 28-2-105, the disputed area must fall within the calls of the adverse possessor's deed. *See Burks v. Boles*, 934 S.W.2d 653, 655 (Tenn. Ct. App. 1996). The statutory prescriptive period does not commence until possession of the property under assurance of title begins. *See Barnes v. Vickers*, 62 Tenn. 370, 372 (1874).

The party claiming title through adverse possession has the burden of proof. *See Buchanan v. Nixon*, 163 Tenn. 364, 369, 43 S.W.2d 380, 382 (1931); *Blakemore v. Matthews*, 154 Tenn. 334, 341, 285 S.W. 567, 569 (1926). We have already determined that the March 22, 1966 deed from the Bomars to the Crowells conveyed Tract A, not Tract B. Even were we to find that the Crowells have been possessing Tract B adversely since 1966, no part of Tract B was included within the calls of the March 22, 1966 deed. Thus, the Crowells have not carried their burden regarding their Tenn. Code Ann. § 28-2-105 claim because they have failed to prove that they were holding adversely the property covered by the March 22, 1966 deed from the Bomars.

## THE COMMON-LAW PRESCRIPTION CLAIM

Parties without assurance of title may acquire a fee simple interest in property by continuously possessing the land for twenty years under a claim of right. *See Keel v. Sutton*, 142 Tenn. 341, 346, 219 S.W. 351, 353 (1920); *Cooke v. Smith*, 721 S.W.2d 251, 255 (Tenn. Ct. App. 1986); *Preston v. Smith*, 41 Tenn. App. 222, 228, 293 S.W.2d 51, 53 (1955). The possession must be actual, adverse, continuous,

exclusive, visible, and notorious. *See Catlett v. Whaley*, 731 S.W.2d 544, 546 (Tenn. Ct. App. 1987). Persons seeking to establish title must establish their possession by clear and positive proof, *see Jones v. Coal Creek Mining & Mfg. Co.*, 133 Tenn. 183, 185, 180 S.W. 991, 992 (1915); *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991), that leaves no doubt concerning the adverse claim of ownership. *See Cooke v. Smith*, 721 S.W.2d at 254. To be adverse, the nature of the possession need only be consistent with the nature and circumstances of the land involved. *See Bensdorff v. Uihlein*, 132 Tenn. 193, 198, 177 S.W. 481, 482 (1915); *Catlett v. Whaley*, 731 S.W.2d at 546.

We need not minutely dissect the nature of the Crowells' possession of the disputed property in this case because they have failed to demonstrate that they have possessed the property for at least twenty years. They began possessing the property, believing it to be theirs, in March 1966. On October 1970, the Bomars conveyed the property to the Arnolds, and the Hastys purchased the Arnolds' property on the courthouse steps in April 1980. In June 1985, the Hastys constructed a fence around portions of the property. In addition to the shortness of time the Crowells possessed the property, the record contains no evidence that either the Arnolds or the Hastys knew or should have known of the Crowells' adverse claim. *See Tidwell v. Van Deventer*, 686 S.W.2d 899, 902 (Tenn. Ct. App. 1984).

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to W. J. Crowell and Mildred P. Crowell for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____

-8-

SAMUEL L. LEWIS, JUDGE