Hay wood, J udge,
delivered the opinion of himself, Peck and Williams; Catron, J. not present, and Whyte, J. dissenting. Davidson’s grant, (under which the defendants claim,) begins at A, (see Diagram) and runs toB; then calls to run south 236 chains, which distance terminates at C.; it then calls to run west to Polk’s c orner at E.
The grant to Reese (under which the plaintiff claims,) calls to begin at Davidson’s corner E, then to run with Davidson’s line to his corner, (a stake) 311 chains, which course and distance will terminate at D; but if bound to run with the line of Davidson, will include the triangle E. C. D.
There is no proof, that Davidson’s third line was ever run, or any mark made at the termination of the second line. The agent of Houston, who claims under the grant to Reese, had run and marked the line E. D. in 1806. He sold to that line, part of the land granted to Reese, *117 and made conveyances conforming to the line E. D. On the other side of the line E. D. those holding under Davidson’s grant have also conveyed, regarding the line E. D as the boundary. The bargainees, in the triangle E. C D, have holden under the deeds of conveyance to them, formore than seven years before thcbringing of thisaction.

*116

*117 Porter, the agent of Houston, proved that in 1806, when lie run the line E D, it was generally understood in the neighborhood to be the dividing line between Houston and Davidson.
The plaintiffs never had possession north of the line E. D., nor was it known where the second line of Davidson would terminate. And in 1819, under the processioning act of that year, the said second line was run.
Davidson’s grant begins at A, runs to B, and then south, 53 degrees east, 236 chains to a stake, not calling for Reese’s comer, and will stop at C; then west, 285 chains to Polk’s corner: There is an excess of quantity stopping at C. The grant to Reese begins at E, calling it Davidson’s corner, then with his line east, 285 chains to his southeast corner; then south, &c. The plats annexed to the grants exhibit rectangular figures. Davidson’s survey was first made, as appears by the date of the plats. And the question is, whether the call of Reese’s grant will be sufficient to fix the corner of Davidson at E?
The court charged the jury, that the line of Davidson, calling to run south to a stake, should stop at the end of the distance, notwithstanding the plat exhibited a rectangular figure, and that a line from such termination to the corner E would be an oblique, diagonal line. He also charged, that as the defendants did not dereign title from Reese’s grant, seven years would be no protection to them, and that if the jury believed that a line was agreed upon between Davidson and Houston in 1806, still it would only be presumptive evidence, and would not bind Houston if he can prove that the line was not at that place. Exception was taken to Ihe charge of the court. The jury found for the plaintiff, who had judgment, upon which *118 this writ of error was taken. Now what does the law decide upon this statement of facts?
Wherever, in a grant or deed a line is called for and described, it must necessarily be fixed to a certain place by parol testimony, shewing that the line described is at that place. But an uncertainty of the place may arise, either from different sets of witnesses, fixing on different places, (1 Wheat, and 2 Tenn. Rep. 302,) or from its being unknown whether the description, agreeing equally well with the real or reputed line, meant the one or the other. As for instance in this case, where the line called for in the survey of 1785, is a line running west to the hickory and ash at E, where that in 1790 calls for the same corner at E, and for a line east from thence, which, independently of the call for Davidson’s line, would be the reputed boundary for both tracts, both calling for the same corner, and for the same course and distance precisely; theonewesi and the other east. It being atthat timenot known, that the distance from B would terminate at C, this call of course might not have contemplated the line C E, or any other than the reputed line D E. Hence the uncertainty whether the reputed or the real line, wherever it may be, was the one intended in the call, it being necessary at the same time that two tracts should join, at either the one or the other of these lines. As in case of differing evidence, that which preponderates shall fix it, and may prevail at one time and not at another, as juries and opinions change, there would be an eternal controversy, unless it could be settled by agreement. And as no law requires such agreement to be by deed, a verbal agreement is as good as one by deed, and is in all respects as effectual, when once established by proof. Such agreement being not a conveyance of land, but only an ascertainment of lands already conveyed, need not be by deed; and being not an agreement for the sale or conveyance of lands, is not put down, or required to be in writing by the statute of frauds. It stands independently of the law concerning the modes of conveyance of lands, and the law for the prevention of frauds and perjuries; an agree *119 ment supposed by the rules of the common law, as they existed anterior to the passage of either statute or act of assembly. And it is a much more satisfactory mode of settling boundary, and therefore, tobe encouraged, than testimony concerning the line described. For the agreement fixes the boundary unalterably, from the time it is made, thenceforward forever, whereas, it can never be fixed by parol testimony when it varies from and disagrees with itself, some witnesses being in favor of one place, and some of another, causing at different times, different and discordant verdicts on the same question. There is no doubt then, that upon principle and consulting the convenience of mankind, the line, so called for and described in a grant or deed, may be fixed by verbal agreement of the parties, whose common line it is. And if it be a line called for in a grant, where the state has used words applicable to the legal line, wherever it shall be, and equally so to the reputed line, the fair inference is, that renouncing the right to explain her own equivocal expressions, to her own advantage, she has intended to leave to the parties, whose common line it must be when fixed, the liberty of fixing it by agreement, not only for themselves, but for the state likewise. And therefore, the state is as much bound by such agreement as the grantees themselves are. The agreement, when made, may be proved by express testimony, and is valid to fix the boundary from the time it is made, being not prohibited by any statute or act of assembly, and therefore, in reality, does not need the confirmation of acquiescence, though that circumstance is stated in some of the books: or it may be proved by circumstances from which the agreement is in-ferable. One of these is long acquiescence of both parties, and clearing the lands, on either side, up to a certain limit and no further, and frequently speaking of this limit as the boundary between them.
These, after sufficient time elapsed, will raise the presumption of agreement for the purpose, which will stand until the contrary can be proved. Another circumstance is, if the parties sell and convey lands by deed on *120 either side of the line, calling for it as their common boundary, and making the lands passed by them to bound upon it, this is the most undeniable circumstance that can happen, upon which to raise the presumption, for a proper estoppel is, where both partiess peak in a deed of indenture, which hinds and estops both parties equally. Yet there is also another estoppel of one party only, where he makes a deed poll. When both parties, by deeds not between each other, hut themselves and third persons, have made deeds, which if made between each other would have been estoppels, they are now with respect to each other, deeds poll estopping the maker, and when that estoppel rests upon both, it is, in principle, equivalent to an estoppel by deed of indenture made between both. It is, to say the least of it, the strongest evidence that can be offered, to raise the presumption of an agreement between the parties, and when moreover, it is confirmed by the rights of third persons, acquired under such declarations made by both, and by the settlements of such third persons made upon the lands conveyed, and by their clearing, building upon, and improving the same for thirteen years together, without interruption from the owner of the lands on the opposite side, these circumstances are such as will cause an agreement on the line to he presumed, if any circumstances in 'the world can do it. In modem times presumption is justly a favorite of our law, and either grants, deeds, records, or any thing else necessary to account for long possession and occu-pance, shall he received for that purpose, whether the thing to be inferred, he an agreement or title, or whatever else it is, that will show the possession to have been legal, and will confirm the possessor of it. As the favor of the law towards this species of proof has increased unj der the cherishing hand of experience, the time for raising it has gradually become shorter, and the doctrine has been recognised, that strong circumstances, with time, may raise the presumption much sooner than it would be by time alone, without circumstances. These ideas, supported as (hey arc by principle, and bj the convenience and *121 welfare of mankind, would be recognized even though no precedents supported them. But they are abundantly supported by repeated decisions both in England and here. At present we will only refer to 2 Yes. 448, and to 6 Wheat. 513, the latter of which cases is exactly the same with the present in all its circumstances, except the express agreement found in the one case, whereas, it is 3iot proved in the present case, but is only inferable from circumstances.
The majority of the court are clearly of opinion, that the circumstances of this case, as proved in evidence, should be left with the jury, with a charge suitable to the rules laid down in the present opinion of this court.
Judgment reversed.