# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 4, 2004 Session

## ARVELL EZELL, ET AL. v. ALVIN E. DUNCAN, ET AL.

### Appeal from the Chancery Court for Perry County
### No. 3902 & 3903     Timothy L. Easter, Judge

---

### No. M2003-00081-COA-R3-CV - Filed December 15, 2004

---

This appeal involves a boundary line dispute between neighbors. The trial court found in favor of the plaintiffs' boundary line description, and defendants appeal. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Bobby A. McGee, Linden, Tennessee, for the appellants Alvin E. Duncan and Wife, Hazel Duncan.

Douglas Thompson Bates, III, Centerville, Tennessee, for the appellees, Arvell Ezell and Lance Duncan.

### MEMORANDUM OPINION[1]

Neighbors Arvell Ezell and Alvin and Hazel Duncan share a common border on three tracts of land. The parties refer to the two Ezell tracts as the Home Tract and the Thompson Tract, and the Duncans' tract is simply called the Duncan tract. Mr. Ezell is the owner of the Home Tract, east of

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

the Duncan property, and a co-owner with Lance Duncan to be of the Thompson Tract, south of the Duncan property.[2]

In 1984, Mr. Ezell hired Thomas White to prepare a survey plat to establish the exact common boundary line. Key to the determination of the boundary line was the location of a "white oak with hickory pointers" which is referenced in all the deeds and was used by Mr. White to establish the common boundary line for the three tracts. Once the White survey was complete and the Duncans declined to offer a viable alternative,[3] Mr. Ezell recorded the White survey in the Perry County Register's Office on December 19, 1985.

In 1997, when Mr. Ezell began cutting timber on the Thompson Tract on what he believed to be his property as established by the White survey, the Duncans hired F & M Surveying to conduct another survey. Not liking the result, Mr. Duncan took it upon himself to personally survey his property with a compass. While conducting his own survey, Mr. Duncan began painting a new boundary line, cutting down trees supposedly blazed by Mr. Ezell,[4] and using them as posts for his new boundary which shifted the common boundary to the east in his favor, adding fifteen acres to the Duncan Tract when compared with the White survey.

## I. TRIAL PROCEEDINGS

In September 1998, Mr. Ezell and Mr. Lance Duncan filed suit against the Duncans in an effort to settle the parties' boundary line dispute. Specifically, plaintiffs requested the line between the parties be set in accordance with the White survey. The Duncans counterclaimed, requesting the court to establish the true boundary and to compensate them for the timber improperly cut on their property by Mr. Ezell. Following the filing of the lawsuit, the Duncans hired yet another surveyor, Devon Acheson, to survey the disputed boundary line. Mr. Duncan led the Acheson crew himself during the survey. The Acheson survey disagreed with the White survey's boundary line placement. The disagreements in the two surveys amounted to a dispute over roughly fifteen acres.

Following a bench trial spanning three days, the trial court found the White survey more credible than the Acheson survey. The trial court also rejected the Duncans' argument that the parties had acquiesced that the boundary lines were controlled by the steel fence posts put in place in the 1940's by Mr. Duncan and Mr. Harper. The trial court ordered the Register of Deeds to correct

---

[2]Lance Duncan died during the pendency of this matter, and his heirs have been substituted as parties.

[3]Mr. White invited the Duncans to a meeting to discuss his work while still in progress. Throughout the process, Mr. Ezell encouraged the Duncans to hire their own surveyor so the parties could reach an amicable agreement regarding their common boundary. Instead, the Duncans offered a partial survey conducted by a Mr. Beasley and Mr. Lawson.

[4]The trial court found Mr. Ezell's testimony "unimpeached and credible" concerning his denial of blazing or marking trees along the disputed boundary line. The trial court found that if any trees cut were painted, they had been painted by Mr. Duncan over the years during his homemade surveys and had contributed to the confusion.

2

the plats at issue to conform to the White survey in favor of the Ezells. The trial court made specific factual findings which set out the evidence and the history of the dispute:

1. Alvin E. Duncan (Duncan) obtained interest in his property (Duncan property) by inheritance in 1948. This property is more particularly described by deed filed on November 23, 1962, with the Perry County Register's Office, describing the property as being situated on the waters of Brush creek in the Third Civil District of Perry County, Tennessee, to-wit:

> "Beginning at a set rock with white oak pointers; thence east 88 poles to a stake in a hollow at Dena Harper's southwest corner; thence north 10 degrees west, 101 poles to a white oak with a hickory pointer; thence north 10 degrees west, 142 poles to a stake in the field; thence _____ 15 degrees east, 35 poles to a black walnut near the foot of the hill; thence ____ 10 degrees east, 8 poles to a hickory; thence north 10 degrees west, 217 poles to a chestnut, with a hickory pointer at the Pleasantville Road; thence west with the meanders of the said road, 103 poles to a chestnut oak; which is the northeast corner of Maye Qualls line; thence south with the meanders of the said Maye Qualls line to the beginning, containing _____ acres, more or less."

> (Trial Exhibit 1);

2. Plaintiff Arvell Ezell (Ezell) obtained interest in property adjoining the eastern boundary of Duncan property in May 1957, from Olen Harper and wife. This property is described in a deed filed on May 6, 1957, with the Perry County Register's Office, as being property situated in the Third (old 4th) Civil District of Perry County, Tennessee, on the waters of Brush Creek to-wit:

> "Tract No. 1: Beginning at a stake with beech pointer near the old school house on the bank of Brush Creek; thence south 30 degrees west, 10 poles to a stake; thence north 85 degrees west, 8 poles to a mulberry tree; thence north 65 degrees west, 10 poles to a stake; thence north 40 degrees west, 27 poles to Beulah Duncan's line; thence south 15 degrees west, 9 poles to a stake on hill; thence south 10 degrees east, 142 poles to a hornbeam with beech pointers at the branch; thence east 10 poles to a white oak with hickory pointers; thence south 10 degrees east, 101 poles to a stake in Eli Duncan's north boundary line; thence east 42 poles to a stake in Gibbon's line; thence north 5 degrees east, with Gibbon's line 94 poles to a stake in Qualls' line: thence north 24 degrees west, with Qualls' line 12 poles to a stake on ridge; thence south 82 degrees west, 8 poles to a white oak; thence west 46 poles to a large chestnut stump, J. W. Qualls' corner; thence north 7 degrees west, 12 poles to a black oak; thence

north 5 degrees east, 34 poles to a white oak on ridge; thence north 44 poles to a stake at falls on the branch; thence north 7 degrees east, 17 poles to a stake on point of the hill; thence north 13-1/2 degrees east, 23 poles to the beginning, containing 40 acres, more or less.

(Trial Exhibit 1) This property was referred to at the trial as the "home tract;"

3. Ezell acquired interest in real property which borders the southern boundary of Duncan's property by inheritance in the 1960's. This property was referred to at trial as the "Thompson tract." Plaintiff Lance Duncan (now deceased) also had an interest in the Thompson tract;

4. For a number of years (over 40), none of the parties have been certain as to the exact boundary line location separating the home tract from the Duncan property and the Thompson tract from the Duncan property;

5. The key determination of both boundary lines is directly tied to the location of the "white oak with hickory pointers" described in both the Olen Harper & Wife to Arvell Ezell & Wife Deed and the Smith Thomas Duncan to Alvin Eunis Duncan & Wife Warranty Deed. (Trial Exhibit 1);

6. At some period of time prior to Ezell's purchase of the disputed property, Duncan and Olen Harper had a discussion concerning the corners and common boundaries of the home place and Mr. Harper's property. Without the benefit of the deeds or compass, Mr. Harper and Duncan erected metal fence posts to mark what Harper believed the location of the boundary line to be. Duncan testified that he had no idea where the boundary line was supposed to be;

7. Over many years, Duncan has painted blazes and made hack marks and blazes on the ground, trees and posts setting out the boundaries as he believed them to be. Duncan alleges that Ezell also was guilty of painting lines and making hack marks at inappropriate locations. Both Ezell and his son, Chester Ezell, deny that they (the Ezells) ever painted lines or produced hack marks or blazes on their property. The Court finds that Ezell's testimony that neither he nor any other members of his family painted or produced these hack marks and blazes to be unimpeached and to be credible. The trees that Ezell allegedly painted were cut down by Duncan and used for posts. Duncan admitted to painting lines on both tracts. Duncan's painting, marking and covering up boundary markers has to a large extent resulted in this confusing property dispute;

8. As a result of the boundary uncertainty, in 1984 or 1985, Ezell employed Thomas White, Registered Land Surveyor, to prepare a survey plat that would establish the

boundary lines. As a result of his investigation and survey work that lasted over a year, White completed a plat of the Arvell Ezell property and filed it with the Register's Office of Perry County on December 19, 1985 (Trial Exhibits 2 and 6). In completing this survey, White located a common corner to begin his survey. To locate this corner, White was able to locate a large white oak which he determined to be the large white oak marked as a corner called for in both deeds. He further went the 101 poles called for in the deeds and found a white oak with corner marks on it. All of these locations and markings appeared to White to be consistent with both deeds;

9. A portion of White's survey in Exhibit 6 has been adjudicated to be inaccurate. This Court finds that the inaccurate portion involved boundaries not in dispute in this matter and as such does not affect White's survey as to the boundary line determination between the Ezell and Duncan properties;

10. White notified Duncan that he was about to mark the line that he had determined by his survey. In January 1985, the parties met along with White and Joe George Beasley. Duncan, through Mr. Beasley, presented a partial survey signed by a Thomas E. Lawson (Trial Exhibit 5). This survey did not agree with the White survey. The Court finds the White survey to be superior to the Beasley/Lawson survey;

11. After thirteen (13) years of no action, Ezell began cutting timber from the Thompson tract on what he believed to be his property. It was at that time that Duncan hired F & M Consultants to survey his property. In September 1997, F & M Consultants presented Duncan with a survey plat. Duncan disagreed with the survey submitted by F & M claiming they failed to use a proven corner to run the survey and the survey failed to follow the calls in his deed. As a result, Duncan fired F & M Consultants by letter of November 5, 1997 (Trial Exhibit 19);

12. On September 11, 1998, Duncan procured the services of Acheson Land Surveying to prepare a survey;

13. Devon Acheson, a licensed surveyor, testified at trial without the benefit of his full file. His employees visited the property in dispute and obtained the data he needed to prepare his survey by use of a GPS system. While he could not remember the full names of his crew who gathered the survey data, the survey was performed under his direct supervision. Prior to his completion of the survey, Acheson did not visit the property site. Acheson prepared a plat of survey of the Alvin and Hazel Duncan property which was dated March 24, 1999 (Trial Exhibit 27).

14. Acheson's survey (Trial Exhibit 27) is inconsistent with White's surveys (Exhibits 2 and 6);

5

15. The area in controversy on both tracts is approximately fifteen (15) acres;

16. In June 1999, Duncan entered into boundary line agreements with other neighboring property owners (Trial Exhibits 20 and 21). To the extent these agreements conflict with the property descriptions of the home tract and the Thompson tract, the property descriptions as set forth in the deeds to these properties control.

After making these factual findings, the court stated that under Tenn. Code Ann. § 16-11-106, the court was to establish a boundary line based on proof of true ownership. The court also found applicable well-established rules of priority of references; rules for harmonizing calls in deeds or surveys; and the requirement that the court consider all the evidence. Applying these rules to the evidence, the court determined that the White survey controlled, that it more accurately set forth the boundary, and that it set forth the true boundary. The court found significant Mr. White's conclusion that the white oak referenced in both deeds was the corner boundary of the tracts and Mr. White located the tree. "This monument is a natural or fixed object which is a locative call, served to fix the boundaries. It is not unreasonable in determining this boundary dispute that this white oak is the fixed object which, when applied, harmonizes the Ezell and Duncan deeds."

## II. THE ISSUES AND THE LAW

The Duncans appeal, arguing the trial court erred in accepting the White survey over the Acheson survey. Specifically, five of the issues raised by the Duncans are challenges to findings of fact made by the trial court: (1) that for over 40 years, the parties have been uncertain as to the exact boundary; (2) that the key to determination of the correct boundary is the location of the "white oak with pointers" described in both deeds; (3) that the Ezells did not blaze or mark trees; (4) that the Duncans did not take action to contest the White survey for 13 years; and (5) that the survey produced by White was more credible than the survey produced by Acheson and more accurately set forth the boundaries.

In resolving a boundary line dispute, the trier of fact must evaluate all of the evidence and assess the credibility of the witnesses. *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999). The question of where the correct boundary lies is generally a question of fact. The usual standard of review applicable to bench trials applies in boundary disputes. *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980). Under that standard, we must review this case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court, unless the evidence preponderates against these findings. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

6

Where there is conflict in testimony, the trial court is in a better position than this court to observe the demeanor of the witnesses and evaluate their credibility. *McCaleb v. Saturn Corp.,* 910 S.W.2d 412, 415 (Tenn.1995). Consequently, appellate courts afford considerable deference to the trial court's findings of credibility and the weight to be given testimony; *Cutler-Hammer v. Crabtree*, 54 S.W.3d 748, 753 (Tenn. 2001). These standards apply in boundary disputes where the trial court, as the finder of fact, is required to choose between two competing surveys. *See Mix*, 27 S.W.3d at 514 ("Based on our review of the record in the instant case, we cannot say that the evidence preponderates against the trial court's conclusion that the Mix deed and Mr. Barrett's survey are preferable to the Miller deed and Mr. Coleman's survey."); *see also Stovall v. Bagsby*, No. M2002-01901-COA-R3-CV, 2003 WL 22768677, at *2 (Tenn. Ct. App. Nov. 24, 2003) (listing cases where trial judge chose between competing surveys); *Edwards v. Heckmann,* No. E20020-02292-COA-R3-CV, 2003 WL 21486987, at *4-5 (Tenn. Ct. App. June 25, 2003) (where proof was a battle of the experts, *i.e.*, surveyors, reviewing court applied Tenn. R. App. P. 13(d)) and found the evidence did not preponderate against the trial court's findings).

The rules on how a court is to approach a boundary line dispute are well settled in Tennessee:

> In determining disputed boundaries, resort is to be had first to natural objects or landmarks, because of their very permanent character; next, to artificial monuments or marks, then to the boundary lines of adjacent landowners, and then to courses and distances. This rule of construction is to aid in determining the intention of the parties to a deed which is to be determined, if possible, from the instrument in connection with the surrounding circumstances.

*Thornburg*, 606 S.W.2d at 675; *see also Pritchard v. Rebori*, 135 Tenn. 328, 186 S.W. 121, 122 (Tenn. 1916).

### III. ANALYSIS

The trial court herein applied the appropriate legal principles. Our review of the entire record leads us to conclude that the evidence does not preponderate against the trial court's findings of fact relative to the correct boundary. Both deeds referenced a white oak with hickory pointers. The trial court found the common boundary line established by the White survey more credible because it located the white oak with hickory pointers and used it to locate the deed calls. That method harmonizes the deeds.

In contrast, Mr. Acheson did not locate the tree,[5] but Mr. Acheson did not visit the site until the survey was completed. Instead of using the more traditional line of sight method employed by Mr. White, Mr. Acheson employed a subcontractor to use GPS (global positioning satellite) to

---

[5]The Duncans maintain that the original deed calls were made over a hundred years ago and that the tree at issue would no longer exist. Nothing in the record refutes Mr. White's testimony that he found the white oak mentioned in the deeds.

7

establish the coordinate values. Once those values were found, a field crew went to the property under the direction of Mr. Duncan to collect further information. The crew then input the additional data into the computer, and the survey was generated from that process. The crew member who input the data was unavailable to testify and no longer worked for the company.

The trial court found that:

> The Court has considered the testimony of the two surveyors at trial, the manner in which their surveys were performed, the surveyors reliance on the legal description set forth in the controlling deeds, the extent and the sophistication of the surveys, the training and experience of the two surveyors, as well as the deposition of Acheson. The Court therefore finds that White's survey controls, and the Court relies on the White survey in finding that it more accurately sets forth the boundaries between the home tract and the Duncan tract. . . .

We affirm the trial court's adoption of the boundary line established in the White survey and, therefore, its ruling in favor of the plaintiffs, Mr. Ezell and Mr. Lance Duncan.

### IV. ACQUIESCENCE

The Duncans also argue that the location of the boundary between the Home Tract and their property is fixed by the fence posts placed by the previous owner of Mr. Ezell's property, Olen Harper, in 1948. They argue that the trial court erred in failing to give credence or precedence to the agreement or acquiescence as to the boundary line of Mr. Duncan and Mr. Harper as evidenced by the fence posts. The court considered this argument, but did not agree that acquiescence controlled the location of the boundary, noting that when the poles were placed Mr. Harper had not consulted any deeds and Mr. Duncan "had no idea if the location of these poles was correct or incorrect." Consequently, the trial court gave "no weight to the placement of these poles as acquiescence by Ezell that the poles marked the boundary between Duncan and the home tract."

The boundary line between adjoining property owners can be established by acquiescence. *Roane County v. Anderson County*, 89 Tenn. 259, 14 S.W. 1079 (1890). However, while adjoining owners may agree upon the exact location of their common property line when there is doubt about the location of the true line, *Houston's Heirs v. Matthews*, 9 Tenn. 116, 118-19 (1826); *Winborn v. Alexander*, 39 Tenn. App. 1, 17, 279 S.W.2d 718, 725 (1954), they cannot change a boundary by parol agreement when the deed's calls are definite and well understood, *May v. Abernathy*, 23 Tenn. App. 236, 242, 130 S.W.2d 135, 139 (1939). Where the deed clearly establishes the line, there is no basis to resort to parol evidence to establish a different boundary, since only an unascertained and disputed line may be established by parol agreement. *Thornburg*, 606 S.W.2d at 674.

In any event, where there is a claim that the boundary line was established by acquiescence, the proof must show that the acquiescence was mutual and that both parties must have knowledge of the existence of a line as a boundary line. *Duren v. Spears*, 1990 WL 59396, at *2-3 (Tenn. Ct.

8

App. May 10, 1990). Whether acquiescence is shown depends on the facts of the case. *Taylor v. Carlin*, No. W2003-00640-COA-R3-CV, 2004 WL 3679699, at \*3 (Tenn. Ct. App. Feb. 26, 2004) (perm app. denied Nov. 15, 2004). Mutual recognition and knowledge of the line as a boundary is required. *Id*; *see also Brooks v. Brake*, No. 01A01-9508-CH-00365, 1996 WL 252322, \*5 (Tenn. Ct. App. May 15, 1996) (no Tenn. R. App. P. 11 application filed)(finding that to establish the existence of a boundary line by agreement, the party making the assertion must prove among other factors that there was an agreement of the parties or their predecessors to the location of the boundary).

The evidence does not preponderate against the trial court's factual findings surrounding the posts set by Mr. Harper. We agree with the conclusion that there was no acquiescence to a line other than the one established in the deeds and proved by the White survey.

## V. FRIVOLOUS APPEAL

Mr. Ezell ask this court to find the appeal frivolous under Tenn. Code. Ann. § 27-1-122 which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or on its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

However, an award of damages under § 27-1-122 is discretionary. *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985).

It is well settled that neither a party, nor this court, should have to bear the costs and vexation of a meritless appeal. *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999) (citing *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977). An appeal is considered frivolous if there is no reasonable chance of success or if it is devoid of merit. *Id.* The competing surveys of Mr. White and Mr. Acheson presented a non frivolous factual dispute in this case. Therefore, we find that this appeal was not completely without merit and was, therefore, not frivolous.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court and remand the case for any further proceedings consistent with this opinion. Although we find that this appeal is not frivolous, we tax costs of the appeal to the appellants, Alvin and Hazel Duncan.

PATRICIA J. COTTRELL, JUDGE

9