IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 17, 2008 Session

## STATE OF TENNESSEE, ET AL. v. GOOD TIMES, LTD., ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-403-04     Dale C. Workman, Judge**

**No. E2007-1172-COA-R3-CV - FILED SEPTEMBER 23, 2008**

The State of Tennessee ("State")[1] sued Good Times, Ltd. ("Good Times") and others with regard to real property deeded to the State by Good Times after the State was sued for inverse condemnation by Good Times' lessee, Pun Wun Chan d/b/a #1 China Buffet ("China Buffet"). The State claimed that it was entitled to indemnity from Good Times in the inverse condemnation action under its warranty deed. The Trial Court consolidated the State's case against Good Times with the inverse condemnation action and then bifurcated the trial. The inverse condemnation case was tried before a jury and China Buffet was awarded a judgment against the State. The Trial Court then granted summary judgment to Good Times in the State's case against Good Times and dismissed the State's case. The State appeals to this Court. We vacate the grant of summary judgment to Good Times, grant the State summary judgment against Good Times, and remand this case to the Trial Court for a determination of the amount of damages, and for further proceedings as necessary with regard to all other parties and claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Robert E. Cooper, Attorney General and Reporter, and Cynthia L. Paduch, Senior Counsel for the Appellant, State of Tennessee.

R. Louis Crossley, Jr., Knoxville, Tennessee for the Appellees, Good Times, Ltd., a Tennessee Limited Partnership; and Nicholas Cazana.

---

[1] Knox County, Tennessee was also a named party in this suit and in the inverse condemnation suit. Knox County took a voluntary dismissal and is not involved in the appeal currently before this Court.

Michael J. King, Kevin N. Perkey, and Meghan H. Morgan, Knoxville, Tennessee for the Appellee, Elizabeth James.

E. Jerome Melson, Knoxville, Tennessee for the Appellee, Knoxville Association of Realtors, Inc.

## OPINION

### Background

In 1998, China Buffet and Good Times entered into an agreement for China Buffet to lease real property located at 6300 Papermill Road in Knoxville, Tennessee ("the Property") from Good Times for use as a restaurant. In early 2002, the State notified Nicholas Cazana, the general partner of Good Times, that it would be taking a portion of the Property for road construction. In lieu of condemnation proceedings, Good Times agreed to sell a portion of the Property to the State for $222,000. Cazana executed an Agreement of Sale which contained a space for listing the name of any lessee of any portion of the Property or any other party who had any interest in the Property. This space was left blank.

In October of 2002, Cazana executed a Warranty Deed ("Warranty Deed") conveying from Good Times to the State a portion of the Property in fee simple along with drainage, slope, and construction easements. In pertinent part, the Warranty Deed provides:

> The consideration mentioned herein includes payment for the property taken, also payment for any and all incidental damages to the remainder compensable under eminent domain.

> \* \* \*

> *This conveyance is made in consideration of **Two Hundred Twenty-Two Thousand and no/100 ($222,000.00) Dollars**, cash in hand paid, the receipt of which is hereby acknowledged.*

> **TO HAVE AND TO HOLD** said land, with the appurtenances, estate, title and interest thereto Belonging to the said State of Tennessee. And it does covenant with the said State of Tennessee that it is lawfully seized and possessed of said land in fee simple, have a right to convey it and the same is unencumbered.

> **AND IT DOES FURTHER COVENANT** and bind itself, its agents and representatives, to Warrant and forever defend the title to said land to the said State of Tennessee against the lawful claims of all persons whomsoever.

After road construction commenced, China Buffet sued the State for inverse condemnation claiming that while the State had compensated the landlord, Good Times, it had not compensated China Buffet for its loss of parking spaces and use of the front of the entrance to the

-2-

restaurant. The State sought to add Good Times as a defendant to the inverse condemnation suit. The Trial Court denied the motion to add Good Times as a defendant in that suit, but consolidated the inverse condemnation suit with a separate suit filed by the State against Good Times and others. The Trial Court then refused to grant a continuance but instead bifurcated the actions for trial. The inverse condemnation action proceeded to trial before a jury. China Buffet obtained a judgment against the State for $98,800, which was affirmed by this Court in *Pun Wun Chan, d/b/a #1 China Buffet v. State*, No. E2005-01391-COA-R3-CV, 2006 Tenn. App. LEXIS 301 (Tenn. Ct. App. May 9, 2006), *no appl. perm. appeal filed* ("*China Buffet*").

In the suit filed by the State against Good Times and the individual defendants seeking indemnity under the Warranty Deed, Good Times filed a Third Party Complaint against the Knoxville Association of Realtors, Inc. who purchased the remainder of the Property from Good Times after the conveyance to the State. The State filed a motion for summary judgment. Good Times and Cazana also filed a motion for summary judgment. Defendant Elizabeth James, a limited partner of Good Times, filed a motion to dismiss or for summary judgment alleging, in part, that she, as a limited partner, could not be held liable for the obligations or debts of Good Times. After a hearing on the motions, the Trial Court entered a Final Order April 30, 2007, *inter alia*, granting Good Times summary judgment, denying the State summary judgment, and dismissing all of the State's claims against Good Times and the individual defendants. The third-party claims of Good Times against the Knoxville Association of Realtors, Inc. were dismissed as moot. The State appeals the April 30, 2007 order to this Court.

## Discussion

Although not stated exactly as such, the State raises two issues on appeal: 1) whether the Trial Court erred in granting summary judgment to Good Times; and, 2) whether the Trial Court erred in denying summary judgment to the State. Elizabeth James raises an issue on appeal concerning whether she, as a limited partner of Good Times, can be held liable for debts of Good Times.

Our Supreme Court has described the process for reviewing a trial court's grant of summary judgment as follows:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847

S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

We first address whether the Trial Court erred in granting summary judgment to Good Times. An argument was raised that the decision in *China Buffet* collaterally estopped the State from seeking indemnity from Good Times under the Warranty Deed. A "question of whether collateral estoppel applies is a question of law, …." *Tareco Properties, Inc. v. Morriss*, No. M2002-02950-COA-R3-CV, 2004 Tenn. App. LEXIS 774, at *43 n.20 (Tenn. Ct. App. Nov. 18, 2004), *no appl. perm. appeal filed.*

In *Beaty v. McGraw* this Court discussed the doctrine of collateral estoppel at length stating:

Collateral estoppel is an issue preclusion doctrine devised by the courts. *See Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992); *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989); *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 565 (Tenn. Ct. App. 1991). Like other preclusion doctrines, its purposes are to conserve judicial resources, to relieve litigants from the cost and vexation of multiple lawsuits, and to encourage reliance on judicial decisions by preventing inconsistent decisions. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414-15, 66 L.Ed.2d 308 (1980); *Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir. 1997).

* * *

The party seeking to rely on the doctrine of collateral estoppel has the burden of proof. *See Dickerson v. Godfrey*, 825 S.W.2d at 695. To invoke the doctrine successfully, the party must demonstrate:

1.    that the issue sought to be precluded is identical to the issue decided in the earlier suit;

2. that the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit;

3. that the judgment in the earlier suit has become final;

4. that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and

5. that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.

*Beaty v. McGraw*, 15 S.W.3d 819, 824-25 (Tenn. Ct. App. 1998) (footnotes omitted).

The issue of whether the State could seek indemnity from Good Times under the Warranty Deed was not litigated in *China Buffet*. Rather, this issue was specifically reserved when the two actions were bifurcated for trial. A careful and thorough review of the record on appeal reveals that this issue was neither litigated nor decided in *China Buffet*. Given this, the State is not collaterally estopped from seeking indemnity from Good Times under the Warranty Deed as a result of the decision in *China Buffet*.

Good Times argues on appeal that the State cannot seek indemnity against Good Times under the Warranty Deed because the damages awarded in *China Buffet* were damages suffered as a result of diminished value of the leasehold in the remaining property, not in the smaller parcel conveyed to the State under the Warranty Deed. Good Times asserts that the warranties in the Warranty Deed apply only to the small portion of real property deeded to the State and that China Buffet was not awarded any damages with regard to this particular portion of the real property. In its brief on appeal, Good Times asserts that China Buffet "never made any claim based upon the value of his interest in the ***property conveyed*** to the State by Good Times." (emphasis in original).

Good Times is mistaken. China Buffet had a leasehold interest in the entire property including the portion deeded to the State. China Buffet claimed, and was awarded, incidental damages to its interest in the entire property because "the fair market value of the property has been affected by a significant and permanent loss of parking space, which has resulted in the loss of access to and utility of the restaurant." *China Buffet*, at ** 7-8.

Good Times also argues that prior to the execution of the Warranty Deed, the State represented to Cazana that the money being paid for the portion of the Property being deeded to the State was all for the landlord. It is a well established substantive rule of law that prior representations are deemed to have merged into the written contract or deed. *Minor v. Belk*, 360 S.W.2d 477, 483 (Tenn. Ct. App. 1962). Plus, the Agreement of Sale executed by Cazana on behalf of Good Times provided a space for Good Times to disclose the names of lessees or any other party who had any interest in the property being conveyed and that space was left blank. Cazana could

have filled in this blank and taken this opportunity to inform the State that China Buffet had not been compensated by Good Times for its interest in the Property. He did not. The Warranty Deed, again executed by Cazana on behalf of Good Times, provides:

> The consideration mentioned herein includes payment for the property taken, also payment for any and all incidental damages to the remainder compensable under eminent domain.

The deed clearly and unambiguously provides that the payment includes "any and all incidental damages to the remainder …." All means all and not some, or a part, or a portion, or a few. If any other party in addition to Good Times had any compensable interests in the Property, the clear and unambiguous language of the Warranty Deed provided that the payment made under the Warranty Deed was in satisfaction of all of those interests. While Good Times and the State could not through the Warranty Deed extinguish China Buffet's interest in the property, Good Times could, and did, make the warranties to the State contained in the Warranty Deed.

Cazana also claims that the Agreement of Sale and the Warranty Deed were prepared by the State, that he did not read these documents prior to executing them, and that these documents are ambiguous and should be construed against the State as the maker. However, this Court has stated that if a party who is not a victim of fraud "fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence." *Giled v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993) (quoting *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950)). The record is devoid of any evidence showing that Cazana or Good Times was a victim of fraud. As such, they are presumed to know the contents of the Warranty Deed and must suffer the consequences of their own negligence. As discussed above, the Warranty Deed is not ambiguous and must be construed according to its plain language.

The State is not collaterally estopped from seeking indemnity under the Warranty Deed and the State negated the claims made by Good Times that China Buffet was awarded damages only as to real property not covered under the Warranty Deed; that prior representations made regarding the payment controlled instead of the Warranty Deed; and that the Warranty Deed was ambiguous and should be construed against the State. Good Times was not entitled to summary judgment as a matter of law. We, therefore, vacate the grant of summary judgment to Good Times.

We next consider whether the Trial Court erred in denying summary judgment to the State. As discussed, the Warranty Deed in this case clearly and unambiguously provides:

> **TO HAVE AND TO HOLD** said land, with the appurtenances, estate, title and interest thereto Belonging to the said State of Tennessee. And it does covenant with the said State of Tennessee that it is lawfully seized and possessed of said land in fee simple, have a right to convey it and the same is unencumbered.

**AND IT DOES FURTHER COVENANT** and bind itself, its agents and representatives, to Warrant and forever defend the title to said land to the said State of Tennessee against the lawful claims of all persons whomsoever.

As a matter of law, Good Times had duties to the State under the clear and unambiguous language of the Warranty Deed. There are no genuine disputed issues of material fact regarding Good Times' breach of its duties to the State under the Warranty Deed. In addition, there are no genuine disputed issues of material fact that the State suffered damages as a result of this breach as China Buffet obtained judgment against the State in the amount of $98,800. As there is no genuine issue as to any material fact and the State is entitled to a judgment as a matter of law, we grant the State summary judgment against Good Times. Further, we remand this case to the Trial Court for a determination of the amount of damages to be awarded the State with the starting point being the judgment awarded against the State in favor of China Buffet.

As we have vacated the summary judgment granted to Good Times and granted the State's summary judgment, the dismissal of Good Times' third party claim against the Knoxville Association of Realtors, Inc. is vacated as well.

From the record before us on appeal we are unable to address the issue raised by James. Upon remand, the Trial Court is to conduct further proceedings as necessary with regard to James and any and all other parties and claims.

## Conclusion

The judgment of the Trial Court granting summary judgment to Good Times is vacated. The State is granted summary judgment against Good Times and this case is remanded to the Trial Court for a determination of the amount of damages to be awarded the State against Good Times, for further proceedings as necessary with regard to any and all other parties and claims, and for collection of the costs below. The costs on appeal are assessed against the Appellees, Good Times, Ltd., a Tennessee Limited Partnership, and Nicholas Cazana.

_____
D. MICHAEL SWINEY, JUDGE

-7-